**YOUNG MEN'S CHRISTIAN ASSOCIATION OF the CITY OF WASHINGTON, Appellant,**

v.

**Samuel COVINGTON, Jr., et al., Appellees.**

No. 83–1254.

District of Columbia Court of Appeals.

Argued May 30, 1984.

Decided Dec. 4, 1984.

Miss Nolan. He was lucky to get off with only a fine.

Frank H. Strickler, Washington, D.C., with whom Charles L. Wilkes, Washington, D.C., was on briefs, for appellant.

Alan Raywid, Washington, D.C., with whom Eric Sirulnik and Peter Aaron, Washington, D.C., were on brief, for appellees.

Before NEBEKER, BELSON and TERRY, Associate Judges.

BELSON, Associate Judge:

The Young Men's Christian Association of the City of Washington (YMCA) appeals from a grant of a preliminary injunction enjoining the YMCA from conveying certain real property and from allowing its further deterioration. We reverse the first provision of the injunction because there was insufficient showing of imminent irreparable harm, but affirm the second.

The YMCA is trustee for property at 1816 12th Street, N.W. The declaration of trust subject to which the YMCA administers the property states that the YMCA covenants

> that it holds and will hold the land and premises herein before described [those on 12th St.] to use the same or the proceeds thereof, in the event that it shall, in the discretion of the Board of Trustees of the said YOUNG MEN'S CHRISTIAN ASSOCIATION BEC[O]ME NECESSARY OR ADVISABLE to sell said land and premises for the work of the said YOUNG MEN'S CHRISTIAN ASSOCIATION among colored men of the District of Columbia.

Since 1912, the 12th Street building has housed the Anthony Bowen Branch of the YMCA. In 1975 the building, which is important in the city's cultural history, was made an historic landmark. The building has deteriorated. Several portions of it have been closed for decades. In February 1982, the directors of the YMCA decided to

close the building altogether and move its programs, at least temporarily, to other sites in the neighborhood. The YMCA stated that it closed the building because the building generally was unsafe. Various areas within it were dangerous for the staff and members of the branch to use; the building appeared to have some structural weaknesses; it was difficult to heat; fire code violations abounded.

A group of residents of the neighborhood around the 12th Street building sued the YMCA for breach of trust. Plaintiffs alleged that the YMCA had breached the provisions of the express trust by allowing the building to deteriorate and by closing it, that the YMCA had breached an implied or constructive trust duty to use certain funds for the benefit of the express trust's beneficiaries, and that the YMCA had been negligent in allowing the deterioration to occur.

The trial court entered a preliminary injunction against the YMCA. The injunction ordered that the YMCA

> is hereby enjoined and restrained from: (1) conveying, assigning, transferring or leasing any interests in the Trust property located at 1816–12th Street, N.W.; and (2) the dissipation, diversion or depletion of any improvements or additions to the facility or its premises.

The YMCA appeals from the grant of the injunction.

In reviewing a trial court's decision on a motion for preliminary injunction, we examine whether the trial court abused its discretion or rested its analysis upon an erroneous interpretation of the law. *In re Antioch University*, 418 A.2d 105, 109 (D.C.1980). We must look to whether the trial court's findings and conclusions are sufficiently supported by the record and whether the trial court employed the proper legal analysis. *Id.* That analysis consists of four considerations: (1) whether the moving party is in imminent danger of

suffering irreparable harm in the absence of preliminary relief; (2) whether there is substantial likelihood that the moving party will prevail on the merits; (3) whether the moving party will suffer more harm if the relief is not granted than will the opposing party if relief is granted; and (4) whether the public interest will be served by issuance of the injunction. *Wieck v. Sterenbuch*, 350 A.2d 384, 387 (D.C.1976); *In re Antioch University, supra*, 418 A.2d at 109.

Before we review the trial court's analysis of these issues in the instant case, we must address the preliminary question of plaintiffs' standing to sue the YMCA for breach of trust. The YMCA asserts that plaintiffs fall within the general rule that members of the general public do not have standing to sue to enforce a charitable trust.[1] *See, e.g., Mount Vernon Mortgage Corp. v. United States*, 98 U.S.App.D.C. 429, 430, 236 F.2d 724, 725 (1956) (citing RESTATEMENT (FIRST) OF TRUSTS § 391 comment d (1935)), *cert. denied*, 352 U.S. 988, 77 S.Ct. 386, 1 L.Ed.2d 367 (1957).

■ We hold that plaintiffs fall within a widely-accepted exception to the general rule in that they have a special interest in the trust. Persons who have a special interest in the enforcement of a charitable trust may maintain a suit for the trust's enforcement. *See Mount Vernon, supra*, 98 U.S.App.D.C. at 430, 236 F.2d at 725 (citing RESTATEMENT (FIRST), *supra*, § 391 comments c and d). *See also, e.g., Jones v. Grant*, 344 So.2d 1210, 1212 (Ala.1977) (granting standing to a group of plaintiffs with a special interest in the enforcement of a charitable trust); *Lokey v. Texas Methodist Foundation*, 479 S.W.2d 260, 265 (Tex.1972) (same); RESTATEMENT (SECOND) OF TRUSTS § 391 (1959).

■ According to the complaint, the individual plaintiffs are all members of the

---

1. Plaintiffs assert that the YMCA conceded plaintiffs' standing in argument before the trial court. Since there is some ambiguity about the matter, we reach the merits of the issue of standing.

Anthony Bowen Branch of the YMCA.[2] Article IV of the bylaws of the Bowen branch explains that, in order to become members, persons must submit an application, have it approved, and pay dues. Members are entitled to use the branch's facilities with a freedom that nonmembers apparently do not have. The Bowen branch's facilities for the last 70 years have included the 12th Street building. It is true that the entire public benefits from the existence of YMCA facilities. The individual plaintiffs, however, receive a particular benefit from the operation of the Bowen branch in the 12th Street building. The closing of that building injures them in particular. We hold that they therefore have standing to sue the YMCA for a possible breach of a charitable trust duty to maintain or keep open the 12th Street building.

We now consider whether the trial court abused its discretion in granting the injunction. As noted above, the injunction has two prongs. The YMCA is enjoined, first, from conveying any interest in the 12th Street building, and, second, from "dissipat[ing], diver[ting] or deple[ting] ... any improvements or additions to the facility or its premises." We hold that the judge abused his discretion in granting the first prong of the injunction but acted within his discretion in granting the second.

■ We order vacated the first provision of the injunction because plaintiffs presented insufficient evidence that a conveyance of the property was imminent. "An injunction should not be issued unless the threat of injury is imminent and well-founded;"

the movant must show threat of "immediate or impending deprivation." *Wieck v. Sterenbuch, supra,* 350 A.2d at 388. The movant must provide clear and convincing evidence that the threat exists. *In re Antioch University, supra,* 418 A.2d at 109 (citing *Vargas v. Chardon,* 405 F.Supp. 1348, 1353 (D.P.R.1975)).

The record shows that over the last several years the YMCA has considered closing the building permanently and moving the Bowen branch services to another location. The board has reviewed several possible new sites. But the record does not contain evidence that will support a finding that the move is imminent. During the meeting at which the YMCA board of directors decided to close the 12th Street building, the board also passed unanimously a motion that the building would be considered—presumably after renovation—as a permanent site for the Bowen branch. At a later meeting, the board passed a motion supporting the restoration of the building. The president of the YMCA stated in a September 7, 1983, affidavit that "[t]he Board of Directors has no present intention to sell or otherwise dispose of the 12th Street building.... The building is not on the market for sale or lease. There is nothing pending before the Board of Directors regarding the disposition of the structure." Furthermore, at the injunction hearing, the YMCA's counsel offered to stipulate that the YMCA would not dispose of the building without first notifying the court and counsel and obtaining the court's approval.[3] This offer eliminated any possibility that a sale could be accomplished without plaintiffs' foreknowledge. Plain-

---

**2.** We accept the complaint at face value as being correct on this point. We need express no opinion on whether the Shaw Project Area Committee, Inc., is a proper plaintiff, because we hold that the individual plaintiffs have standing to sue. We also express no opinion on whether the involuntary plaintiffs are properly joined. In particular, we note that plaintiffs' Motion to Make Corporation Counsel an Involuntary Plaintiff or Defendant is apparently pending.

We do not consider the issues raised by that motion.

**3.** Plaintiffs' counsel objected that counsel for the YMCA did not have the authority to bind the YMCA. YMCA's counsel stated at the hearing and at oral argument before this court that he was satisfied with his authority to offer to stipulate on his client's behalf, and we accept his statement.

tiffs' right to object in advance to a sale would thus have been protected if a sale had become imminent.

The trial judge did not make a finding that a conveyance was imminent. He ruled that "the plaintiffs are entitled to judicial review of the Trustee's handling of the Trust property, even without an actual or planned disposition of the Trust property." We agree that plaintiffs will be entitled to review on the merits. But in the absence of sufficient evidence that the threatened injury is pending, they are not entitled to a preliminary injunction protecting them from that injury. We therefore order the first provision of the injunction vacated.

■ We affirm as to the second provision, which states that the YMCA is enjoined from "the dissipation, diversion or depletion of any improvements or additions to the facility or its premises." The YMCA asserts that this provision should be read to enjoin the depletion and diversion of money that contributors intended to be used to renovate the 12th Street building, and perhaps other money assets. Plaintiffs contend that it plainly enjoins the YMCA from allowing further physical deterioration of the building. We think plaintiffs' is the only reasonable reading. The trial judge made a finding of fact concerning deterioration; he made none concerning use of financial assets. The words "improvements ... to the facility or its premises" logically refer to the building. A proposed order that plaintiffs submitted focused on assets, but the judge rejected that language in favor of his own.

The trial judge did not abuse his discretion in enjoining the YMCA from permitting the building to deteriorate further. The four considerations that underlie the injunction decision support granting relief. First, there was imminent danger of irreparable harm. The trial judge found that "in

its closed state, the facility is subject to deterioration." While the YMCA, in conjunction with the D.C. government, had secured the building to some degree before the injunction hearing, the trial court was satisfied that the building, already in disrepair, was likely to deteriorate further as the months passed. If the building were to deteriorate beyond economic repair, plaintiffs could not obtain the main relief they seek, the restoration and reopening of the 12th Street building. Thus, the harm that the court enjoined was both imminent and irreparable.

The second factor concerns whether plaintiffs showed a likelihood of success on the merits. We agree with the trial court's conclusion that they did. Plaintiffs argue that the building, in its present closed and deteriorated state, is not being used as the trust dictated. The trial court found that substantial evidence supported plaintiffs' position. This argument of breach of express trust, and plaintiffs' ancillary argument that the trustees negligently allowed the deterioration in breach of their fiduciary duties, could well succeed at the merits stage.[4]

Third, the balance of injuries tips in favor of plaintiffs. While the YMCA may have to spend some money to keep the building from deteriorating, they assert that the building is already quite secure from the elements and from intruders. The burden placed on the YMCA by a requirement that the building be maintained in its present condition is therefore not likely to be very great. On the other hand, too much additional deterioration could deprive the court of the ability to grant the plaintiffs satisfactory relief, so the possible injury to the plaintiffs would be irreparable.

Finally, we agree with the trial court that the public interest favors an injunction

---

4. Because the relevant facts are not yet well-developed, we do not consider the likelihood of success of the plaintiffs' theory that the YMCA breached an implied or constructive trust, but consider only the alleged breach of the express trust.

against further deterioration. The 12th Street building is of substantial cultural significance. If it were to deteriorate beyond repair, the community would lose a valuable asset. While ultimately the building may or may not be renovated, the public interest favors its preservation until that decision is made.

Accordingly, we reverse with respect to the first provision of the injunction and affirm with respect to the second.

*So ordered.*